UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAFAEL BORBON,                                    Civ. Action No.:

                                  **Plaintiff,**

      -against -                                                        **VERIFIED**
                                                                          **COMPLAINT**

THE HOME DEPOT, INC., and HOME DEPOT          *Jury Trial Demanded*
U.S.A., INC.,

                                  **Defendants.**
------------------------------------------------------------------------X

Plaintiff, RAFAEL BORBON (hereinafter referred to as "Plaintiff"), by and through his attorneys, Nesenoff & Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001, alleges upon knowledge with respect to himself, and upon knowledge, information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action brought on behalf of Plaintiff against Defendants THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC., (hereinafter collectively referred to as "Defendants"), for discrimination on the basis of Plaintiff's actual and/or perceived disability, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL"), together with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

4. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because a substantial part of the events which give rise to Plaintiff's claims took place in New York County, New York which is in the Southern District of New York.

5. All conditions precedent to filing the instant action have been fulfilled. On or about October 14, 2016, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the New York State Division of Human Rights.

6. On or about August 29, 2017, the EEOC issued Plaintiff a Notice of Right to Sue ("RTS") which was received on or about August 31, 2017.

7. This action is being brought within 90 days of Plaintiff's receipt of his RTS.

## PARTIES

8. Plaintiff is a citizen of the United States whom is a resident of New York County, New York.

9. At all times relevant, Plaintiff was an "employee" of Defendants as that term is defined by all applicable federal, state, and local laws, including, but not limited to: Title VII, the ADA, the SHRL, and the CHRL.

10. Upon information and belief, Defendant The Home Depot, Inc. ("Defendant Home Depot") is a corporation duly incorporated and existing under the laws of the State of Delaware with a principal place of business located at 2727 Paces Ferry Road, Atlanta, Georgia, 30339.

11. Upon information and belief, Defendant Home Depot U.S.A., Inc. ("Defendant HD USA") is a corporation duly incorporated and existing under the laws of the State of Delaware with a principal place of business located at 2455 Paces Ferry Road, Atlanta, Georgia, 30339.

12. At all times relevant, Defendants were each individually and jointly Plaintiff's "employer" as that term is defined by all applicable federal, state, and local laws, including, but not limited to: Title VII, the ADA, the SHRL, and the CHRL.

## FACTUAL ALLEGATIONS

### Plaintiff Commences Employment with Defendants

13. In or around 2005, Plaintiff was hired to work for Defendants at Defendants' 40 West 23rd Street location in New York, New York (hereinafter the "Location").

14. Initially, Plaintiff was treated nicely and was provided with various reasonable accommodations to compensate for the disability related issues that may have otherwise interfered with his ability to work.

15. In fact, Plaintiff, who has suffered from a significant learning disability and other psychological disabilities since childhood, was hired through a program called Ken's Kids, (now called Ken's Crew), which seeks to find employment for disabled individuals.

16. As a consequence of Plaintiff's learning and psychological disabilities, Plaintiff has difficulty remembering names and sometimes only knows people by their faces.

17. In addition to his learning disability, Plaintiff suffers from a disorder which causes him to excessively clean any bathroom before he uses it. Knowing this, at the start of his employment, Defendants' employees recognized and allowed Plaintiff the necessary extra bathroom time.

### Plaintiff is Labeled the "Slow Kid"

18. Plaintiff performed his job well and was happy with his job, and he was well treated by most of Defendants' employees.

19. Unfortunately, one particular employee, a woman named "Vicky" (last name unknown), was cruel and malicious to Plaintiff on a regular basis, and talked to him in a demeaning tone.

20. Vicky frequently said rude and derogatory things to humiliate Plaintiff. For instance, in front of Plaintiff, Vicky would remark to other employees "oh he's (meaning Plaintiff) one of them *"slow kids,"* and "You know he's part of that program with the slow kids," and, "there's a couple of them at Home Depot."

21. Vicky also referred to Plaintiff as *"special"* in a derogatory and malicious manner, and would say things like: "I'm [going to] get one of those special kids to throw the trash out."

22. Upon information and belief, Vicky was also rude and nasty to other employees who were hired through the Ken's Crew program.

23. Even though Plaintiff had been happily employed at the Location for quite some time without any issues, Vicky acted as if Plaintiff was unable to do his job and second guessed everything he said and did.

24. Vicky was openly mean and nasty to Plaintiff and her behavior was regularly witnessed by other employees and even customers.

25. Plaintiff tried to ignore Vicky's nasty comments and unjustified attitude towards him even though they significantly hurt his pride and self-confidence. Vicky made Plaintiff feel inferior because of his disabilities.

26. Upon information and belief, Defendants' supervisory employees at the Location routinely failed to properly supervise conflicts between staff and their managers, and allowed managers to verbally abuse, bully and discriminate against certain employees.

**Vicky is Promoted and Discriminates Against Plaintiff**

27. Unfortunately, despite their actual and/or constructive knowledge of Vicky's abusive and discriminatory behavior, Defendants soon awarded Vicky and promoted her to the role of Hardware, Plumbing and Electrical Supervisor at the Location.

28. Accordingly, with her promotion, Vicky became Plaintiff's direct supervisor.

29. Plaintiff was very scared and hesitant when he learned that Vicky was going to be his supervisor. Sure enough, Vicky immediately embarked on a campaign of harassment against Plaintiff.

30. Specifically, Vicky constantly called Plaintiff over the loudspeaker in a frustrated tone, as if he were not doing his job. Each time that he walked a customer to another part of the store, as is store policy, she would call him over the loudspeaker.

31. Vicky constantly falsely accused Plaintiff of "getting lost" in front of other employees and customers in the store, even though he had worked there for approximately twelve (12) years and knew where every area of the store was.

32. Further, Vicky continued to refer to Plaintiff as the "slow" and/or "special kid."

33. Other employees and customers regularly asked Plaintiff what Vicky's "problem was" and why she was so rude to Plaintiff. Plaintiff had no explanation for them, even as Vicky became more and more hostile towards him.

34. Vicky also refused to allow Plaintiff to take bathroom breaks and monitored his bathroom break time. Vicky would repeatedly call Plaintiff over the loudspeaker while he was in the restroom, even though she knew that he had to clean the bathroom before he used it.

35. Vicky micro-managed Plaintiff's every movement, confronted Plaintiff with where he was every minute of his work day, and stated that she did not like his "wandering around."

36. Vicky further questioned Plaintiff's bathroom use and took him to the Location's Assistant Manager, who asked him what he did in the bathroom.

37. Plaintiff explained that sometimes he had to clean the bathroom before he used it and that is why he took longer than others when he used the restroom. Plaintiff further explained that he only went into the bathroom for an extended period of time a few times.

38. Vicky, nor any other supervisory personnel, micromanaged Plaintiff's similarly situated, non-disabled counterparts to the same degree, and did not scrutinize Plaintiff's co-workers or confront them about their bathroom breaks.

39. Further, Plaintiff was not allowed to take a break or his lunch break unless Vicky expressly gave him permission to do so. Notably, Plaintiff's similarly situated co-workers could take a break whenever they wanted without permission. When Plaintiff asked for a break or to take his lunch, as was his right, Vicky would regularly tell him that he had to wait.

40. Vicky regularly told Plaintiff that he had to complete a lengthy task before he could have a break or take his lunch. When Plaintiff finished the task, she would say, "Oh you know what? Wait. I changed my mind, now you have to do this other task before your break."

41. Sometimes, Plaintiff was not even allowed to have any breaks throughout his full work day.

42. Vicky took to making Plaintiff clock out but continue to work to "make up" for how slow she thought he was.

**Plaintiff is Accused of Terroristic Threats and Told He is Going on "Vacation"**

43. On or about December 16, 2015, Plaintiff was called into Defendants' office, where, upon information and belief, someone from Defendants' Corporate headquarters was on speaker phone, from the "Aware line."

44. Plaintiff was asked about his relationship with a person whose name he did not recognize (hereinafter "Jane Doe"), and was asked if he and Jane Doe had a problem with one another.

6

45. Plaintiff did not know who Jane Doe was because, due to his disability, he cannot remember names and can only recognize a person by seeing their face. Plaintiff told Defendants' representatives this.

46. Defendants then stated, "Well, she said that you were going to come in and shoot everybody." Defendants asked Plaintiff if he had a gun and he truthfully said no, and told them "I am a Christian" and follow the Ten Commandments, one of which is thou shalt not kill.

47. Defendants said "Why would somebody that you don't know say that you said something?" Plaintiff responded, "I don't know. There might be one or two people in there who don't like me."

48. Defendants then asked Plaintiff, "Why would she say that you were going to come in with an AK-47?" Plaintiff again truthfully told Defendants that he had never made any such statement.

49. In response, Defendants seemed agitated and exclaimed: "This program (meaning Ken's Crew) is not to hire terrorists."

50. Upon information and belief, Defendants referred to Plaintiff as a terrorist due to his skin color and appearance. Upon information and belief, Defendants perceived Plaintiff to be Muslim and were discriminating against him because they believed him to be Muslim.

51. Defendants told Plaintiff that they would need a statement from him. Plaintiff reminded them that he did not know how to read or write.

52. Thereafter, Plaintiff was told that he needed to "go on vacation for a little while." In reality, Plaintiff was terminated but not advised of same.

53. Thereafter, Defendants caused Plaintiff to be arrested. The charges against Plaintiff were entirely false and subsequently dropped.

54. Upon information and belief, Defendants failed to properly investigate the legitimacy of the allegations against Plaintiff because he was disliked to his disability and perceived national origin and religion.

55. Upon information and belief, Plaintiff was subjected to a hostile work environment and ultimately terminated because of his disabilities and/or perceived disabilities, as well as his perceived religion and/or perceived national origin.

## CLAIMS FOR RELIEF
## AS AND FOR THE FIRST CAUSE OF ACTION
*(Disability Discrimination – Disparate Treatment in violation of the New York State Human Rights Law, the New York City Human Rights Law, and the Americans with Disabilities Act)*

56. Plaintiff repeats and re-alleges each and every fact as set forth above.

57. Plaintiff is a disabled individual as defined by the SHRL, CHRL, and the ADA, and is therefore a member of a protected class.

58. Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

59. As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate discipline on the basis of his actual and/or perceived disability.

60. The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment and culminated in Plaintiff's discriminatory discharge.

61. By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

62. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and him family, harm to his employability and earning capacity, painful embarrassment among

his family, friends, and co-workers, damage to his personal and professional reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

63. Accordingly, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived disability by virtue of treating Plaintiff less well than his similarly situated colleagues outside his protected class in violation of his statutory rights as guaranteed by the SHRL, CHRL, and the ADA.

### AS AND FOR THE SECOND CAUSE OF ACTION
*(Disability Discrimination – Hostile Work Environment in violation of the New York State Human Rights Law, the New York City Human Rights Law, and the Americans with Disabilities Act)*

64. Plaintiff repeats and re-alleges each and every fact as set forth above.

65. Plaintiff is a disabled individual as defined by the SHRL, the CHRL, and the ADA, and is therefore a member of a protected class.

66. Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

67. As set forth herein and above, Defendants subjected Plaintiff to a hostile work environment on the basis of his actual and/or perceived disability.

68. The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

69. The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment and culminated in his unlawful discharge.

70. By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

71. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and his family, harm to his employability and earning capacity, painful embarrassment among

his family, friends, and co-workers, damage to his personal and professional reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

72. Accordingly, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived disability by virtue of subjecting Plaintiff to a hostile work environment on the basis of his disability in violation of his statutory rights as guaranteed by the SHRL, the CHRL, and the ADA.

### AS AND FOR THE THIRD CAUSE OF ACTION
*(Failure to Accommodate in violation of the New York State Human Rights Law, the New York City Human Rights Law, and the Americans with Disabilities Act)*

73. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

74. As set forth in detail above and herein, Plaintiff suffered (and continues to suffer) from a learning disability and other psychological disabilities since childhood, and is therefore "disabled" under the SHRL, the CHRL, and the ADA.

75. As set forth in detail above and herein, one symptom of Plaintiff's disability is his difficulty remembering names and sometimes only knows people by their faces.

76. As set forth in detail above and herein, in addition to his learning disability, Plaintiff suffers from a disorder which causes him to excessively clean any bathroom before he uses it.

77. Defendants were aware and on notice of Plaintiff's disability and the symptoms thereof.

78. Plaintiff required a reasonable accommodation in the form of extra time to use the bathroom in order to cope in treating the symptoms of his disability.

79. In response, Defendants refused to allow Plaintiff a reasonable accommodation and refused to participate in any interactive discussion or process to determine whether any accommodation was available to assist Plaintiff and address his disabilities in the workplace.

80. Accordingly, Defendants discriminated against Plaintiff by virtue of failing to accommodate his known disability and failing to engage in an interactive process in violation of the SHRL, the CHRL, and the ADA.

## AS AND FOR A FOURTH CAUSE OF ACTION
*(Race/Color and/or National Origin Discrimination in violation of the New York State Human Rights Law, the New York City Human Rights Law, and Title VII of the Civil Rights Act)*

95. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

96. Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

97. As set forth herein and above, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived race and/or national origin when they accused Plaintiff of being a "terrorist" without basis and therefore terminated his employment.

98. The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment and culminated in his unlawful discharge.

99. By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

100. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and his family, harm to his employability and earning capacity, painful embarrassment among his family, friends, and co-workers, damage to his personal and professional reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

101. Accordingly, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived race and/or national origin in violation of his statutory rights as guaranteed by the SHRL, the CHRL, and Title VII.

## AS AND FOR A FIFTH CAUSE OF ACTION
*(Religious Discrimination in violation of the New York State Human Rights Law, the New York City Human Rights Law, and Title VII of the Civil Rights Act)*

95. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

96. Plaintiff was qualified to work as an employee for Defendants and he satisfactorily performed the duties required by the position he held at Defendants.

97. As set forth herein and above, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived religion when they accused Plaintiff of being a "terrorist" without basis and therefore terminated his employment.

98. The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of his employment and culminated in his unlawful discharge.

99. By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with his employment.

100. As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and his family, harm to his employability and earning capacity, painful embarrassment among his family, friends, and co-workers, damage to his personal and professional reputation, disruption of his personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

101. Accordingly, Defendants discriminated against Plaintiff on the basis of his actual and/or perceived race and/or national origin in violation of his statutory rights as guaranteed by the SHRL, the CHRL, and Title VII.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, Plaintiff seeks a judgment against Defendants as follows:

(i) A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State, and New York City laws;

(ii)     Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

(iii)    An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

(iv)    All compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

(v)     Punitive and/or exemplary damages against Defendants;

(vi)    Statutory pre- and post-judgment interest on all sums awarded;

(vii)   An award of costs and attorneys' fees; and

(viii)  Any other relief the Court finds just and proper.

Dated: New York, New York
       October 24, 2017

                                           **NESENOFF & MILTENBERG, LLP.**
                                           *Attorneys for Plaintiff*

                             By:    /s/ Megan Goddard
                                           **Megan S. Goddard, Esq.**
                                           **Gabrielle M. Vinci, Esq.**
                                           **363 Seventh Avenue, Fifth Floor**
                                           **New York, New York 10001**
                                           **212.736.4500**

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

**RAFAEL BORBON,** being duly sworn, deposes and says:

I am the Plaintiff named in this matter. I have read the annexed Complaint, know the contents thereof, and the same are true to my knowledge, except as to matters alleged upon information and belief and as to those matters, I believe them to be true.

*/s/ Rafael Borbon*
**RAFAEL BORBON**

Sworn to and subscribed before me
this 24 day of October, 2017.

*/s/ Gabrielle Vinci*
**NOTARY PUBLIC**

> GABRIELLE M. VINCI
> Notary Public, State of New York
> Registration #02VI6333133
> Qualified In Nassau County
> Commission Expires Nov. 16, 2019